IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| HARK'N TECHNOLOGIES, INC., a Utah Corporation,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>CROSSOVER SYMMETRY, a Colorado registered DBA; FITWORKS, INC., a Colorado corporation; and DUGGAN MORAN, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT MARK E. ELWOOD<br><br><br><br><br><br>Case No. 1:10-CV-81 |

This matter is before the Court on Defendants' Motion to Exclude Plaintiff's Expert Mark E. Elwood. For the reasons stated below, the Court will deny this Motion without prejudice.

I.  BACKGROUND

In this action, Plaintiff is seeking damages for alleged trade dress infringement on Plaintiff's sheathed elastic resistance bands. In anticipation of trial, both parties have retained experts to analyze the alleged damages resulting from Defendants' sale of allegedly infringing

1

resistance bands. Through this Motion, Defendants seek to exclude Plaintiff's damages expert, Mark Elwood, from testifying at trial. Defendants argue that Mr. Elwood is not qualified as an expert and that his opinions are not reliable.

## II. LEGAL STANDARD

Fed.R.Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals Inc.*[1] and *Kumho Tire Co., Ltd. v. Carmichael*,[2] the Supreme Court interpreted the requirements of Rule 702. "*Daubert* requires a trial judge to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"[3] "In applying Rule 702, the trial court has the responsibility of acting as a gatekeeper."[4] "The trial court has the discretion to determine how to perform its gatekeeping function."[5]

Arguments that speak to the weight that should be afforded expert testimony do not affect

---

[1] 509 U.S. 579 (1993).

[2] 526 U.S. 137 (1999).

[3] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1163 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 589).

[4] *In re Breast Implant Litigation*, 11 F. Supp. 2d 1217, 1222 (D. Colo. 1998).

[5] *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007).

the admissibility of the testimony under Rule 702.[6] It is the jury's role to determine the weight expert testimony should be given.[7] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[8] The clear distinction between weight and admissibility is demonstrated in *Compton v. Subaru of America, Inc.*, where the Tenth Circuit affirmed a district court's decision to admit expert testimony in spite of the court's "extremely low opinion of [the expert's] credibility" because the testimony satisfied Rule 702.[9]

III. DISCUSSION

Defendants make three categories of arguments in support of their Motion. First, Defendants argue that Plaintiff's expert is not qualified to testify as to damages in this case. Second, Defendants argue that Mr. Elwood's expert report is not complete, and that he should be barred from testifying. Finally, Defendants argue that Mr. Elwood's data and methodology are not reliable. These arguments will be considered in turn.

---

[6]*McDonald v. N. Am. Specialty Ins. Co.*, 224 F. App'x 761, 767 (10th Cir. 2007) (collecting cases).

[7]*McCoy v. Whirlpool Corp.*, 287 F. App'x 669, 679 (10th Cir. 2008) ("Maintaining the distinction between a court's reliability determination under Rule 702 and a sufficiency or merits determination is 'indeed significant as it preserves the fact finding role of the jury.'" (quoting *In re TMI Litig.*, 193 F.3d 613, 665 n.90 (3d Cir. 1999))).

[8]*Daubert*, 509 U.S. at 596.

[9]82 F.3d 1513, 1520 (10th Cir. 1996) *overruled on other grounds by Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 & 149 (1999).

A.    QUALIFICATIONS

Defendants first assert that Mr. Elwood is not qualified to testify in this matter because he lacks necessary experience. Defendants take issue with Mr. Elwood's lack of experience "in the valuation of intellectual property or analysis of lost profits resulting from infringement of intellectual property."[10]

The Court is not persuaded that Mr. Elwood's lack of experience in the specific roles or fields noted by Defendants necessitates a finding that Mr. Elwood is unqualified to testify in this matter. Mr. Elwood has over 29 years of experience as an auditor, financial controller, and CPA. Although Defendants decry his lack of experience on intellectual property valuations, his expert report is not attempting to value intellectual property. Instead, Mr. Elwood identifies a method of determining lost profits from the sale of goods by analyzing how much profit Plaintiff would make on an individual sale, then multiplying that number by the number of lost sales. Nearly 30 years of work in the accounting industry qualifies Mr. Elwood to analyze Plaintiff's financial data and express opinions on profitability.

B.    COMPLETENESS

Fed. R. Civ. P. 26(a)(2)(B)(i) requires that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Defendants allege that Mr. Elwood's report is incomplete because (1) he does not make an actual damages calculation, and (2) he does not include his methodology.

---

[10]Docket No. 110, at 6.

*1.     Damages Calculation*

Plaintiff acknowledges that Mr. Elwood has not attempted to provide an actual damages figure, and claims that this was due to a lack of information on the number of sales made by Defendants. As Defendants point out, however, the lack of the most recent sales numbers did not prevent Mr. Elwood from using the data that was available to calculate a damages number through 2011.

Mr. Elwood presents a simple formula for determining damages, suggesting that they can be calculated by multiplying the average sales price of Plaintiff's product by the number of infringing units sold by Defendants, and then multiplying that result by the incremental profit percentage of Plaintiff's products. Mr. Elwood then supplies the incremental profit percentage he believes is appropriate. Once the incremental profit percentage on Plaintiff's products is known, arriving at a damages figure is a simple calculation. Plaintiff claims that Mr. Elwood did not make a calculation at that time because all of Defendants' sales data was not available, and the damages figure would not have been accurate. Defendants could have performed this calculation on the incomplete data as easily as Mr. Elwood. As Mr. Elwood provided Defendants with an adequate explanation for Plaintiff's theory of damages and how they would be calculated, it does not appear they were prejudiced by the fact that he did not do the actual math.

*2.     Methodology*

Defendants argue that Mr. Elwood failed to present a methodology because he failed to explain his formula's origin or provide evidence that it was peer-reviewed or generally accepted

in the industry. This argument is weakened by the fact that Defendants' expert proposes the same formula as the formula generally used in a trade dress infringement case, except that Plaintiff's formula assumes that all of Defendants' allegedly infringing sales would have been made by Plaintiff, while Defendants' formula requires a consideration of factors that could reduce that number.[11] Plaintiff argues that Mr. Elwood's assumption is valid, but that in any event it is the province of the jury to decide the number of sales lost by Plaintiff as a result of the alleged infringement, and not the province of an expert. The Court agrees that although there may be a factual dispute about the number of infringing products to be used in the calculation, the formula's suggested are the same.

Mr. Elwood's report also contains a description of how he arrived at the incremental profit number, and the assumptions he used in arriving at that number. Although Defendants do not agree with those assumptions or the number he arrived at, this does not make Mr. Elwood's report so lacking in his explanation of his methodology that the Court must exclude his testimony.

C.    RELIABILITY

Defendants question both the reliability of Mr. Elwood's methodology for developing his proposed formula and the data underlying the incremental profit percentage that he proposes. These arguments will be considered in turn below.

    *1.    Methodology*

Defendants argue that Mr. Elwood's methodology is unreliable for the same reasons it

---

[11]*See* Docket No. 110, at 20, 31-33.

argued that his report was not complete.  This argument is a essentially a criticism of Mr. Elwood's assumption that all of Defendants' sales would have gone to Plaintiff absent the allegedly infringing conduct.  However, this argument goes to the weight that should be afforded the expert testimony, which is appropriately left to the jury to decide.  Mr. Elwood's assumption can be tested on cross-examination, and the jury can decide whether such an assumption is reasonable, or if the assumptions made by Defendants' expert are more reasonable.   Therefore, the Court will not exclude Mr. Elwood's testimony on these grounds.

      2.      *Incremental Profit Percentage*

Defendants argue that the data used to compute the incremental profit percentage is unreliable because Mr. Elwood added in 2.5 percent in variable costs with little explanation, and because Mr. Elwood based his numbers on Plaintiff's entire product line rather than the products at issue.

      a.      *Variable costs*

To compute the incremental profit percentage Mr. Elwood first determines which portions of Plaintiff's costs are fixed and which are variable.  Fixed costs do not change based on the number of units produced by Plaintiff, and are therefore excluded from the consideration of lost profit from an additional sale.  Variable costs, however, are the costs that are associated with the production of additional units, and directly affect the profit that would be realized on the sale of additional units.  After Mr. Elwood identifies the variable costs, he recognizes that these costs are not always readily identifiable, and judgmentally adds 2.5 percent to come up with a total

variable cost percentage, in order to "ensure that the variable profit rate is not overstated."[12]

Defendants argue that this kind of estimate makes Mr. Elwood's incremental profit figure unreliable. This argument goes to the weight that should be afforded the expert testimony. Defendants can cross-examine Mr. Elwood and question his assumptions before the jury, and Defendants can put on their own expert to estimate variable costs. Therefore, Mr. Elwood's testimony will not be excluded on these grounds.

### b. *Product data*

Finally, Defendants argue that Mr. Elwood's use of Plaintiff's entire product line instead of just the products at issue here make his data unreliable. There can be differences between the profitability of individual products depending on the costs associated with that product and the strategy employed by a manufacturer, and lumping all of those costs together may serve to distort the profitability number of the products at issue in this case. Plaintiff contends that the incremental profitability of its sheathed elastic resistance bands is actually higher than the percentage presented, and that this aggregation of data is actually a windfall to Defendants. However, Plaintiff supplies no evidence to support this assertion, only stating that this will be demonstrated by the evidence presented at trial.

The Court finds this troubling. It is one thing if an expert is forced to make estimates when making his conclusions. It is a more serious deficiency when the expert is using the wrong data as the basis for his conclusion. This incremental profit percentage figure is a key component of Mr. Elwood's damages formulation, and is the primary reason that his testimony would be

---

[12]Docket No. 110, at 20.

valuable to a jury, as the jury will not be able to determine this number without expert testimony.

However, the Court recognizes that there is a difference between weight and admissibility.  This is exactly the type of issue that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof,"[13] is intended to reveal.  If Plaintiff's expert is unable to defend his reliance on data for the entire product line rather than only the specific products at issue, he risks having the jury give his testimony little weight at trial.  However, this does not make his testimony inadmissable under Rule 702.  Therefore, the Court will not exclude Plaintiff's expert on these grounds.

Plaintiff's briefing indicates that Mr. Elwood may intend to present or rely on evidence at trial that was not included in his expert report in order to show that Defendants are not prejudiced by an incremental profit percentage based on Plaintiff's full product line.  This will not be permitted.  Mr. Elwood's testimony will be limited by the evidence which was included in his expert report and for which Defendants have had the opportunity to prepare.

### III.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Exclude Plaintiff's Expert Mark E. Elwood (Docket No. 110) is DENIED.

---

[13]*Daubert*, 509 U.S. at 596 (1993).

DATED   February 21, 2013.

                                                BY THE COURT:

                                                _____
                                                TED STEWART
                                                United States District Judge